# Wytheville.

GERMAN NATIONAL INSURANCE COMPANY AND ANOTHER V.
VIRGINIA STATE INSURANCE CO. AND OTHERS.

June 11, 1908.

Absent, Keith, P., and Buchanan, J.

1. ATTORNEY AND CLIENT—*Counsel Fees—Assessment Upon Defendants.*—
   Counsel fees, over and above the taxable fee allowed by law, cannot
   be assessed upon the debtor or his property, but, when properly
   allowed by the court, must be paid by the creditors or out of the
   funds belonging to them.

2. ATTORNEY AND CLIENT—*Counsel Fees—Deposits by Foreign Corpora-
   tions—Allowance of Fees to State Treasurer.*—When a suit is
   brought to administer the deposit of a foreign insurance company in
   the hands of the treasurer of the State and to subject it to the
   discharge of the liabilities with which it is chargeable under the
   statute, and the treasurer is made a party to such suit, the fund
   is under the control of the court, and by express provision of the
   statute is to be "distributed by the court." His only duty is to
   preserve the fund until it is distributed by the court. He has no
   need for counsel, and it is error to decree fees for his private
   counsel to be paid out of said deposit.

3. COSTS—*Deposits of Foreign Corporations—Case in Judgment.*—Under
   the evidence in this case, it was proper to refer the cause to a
   master to ascertain the liabilities on the deposit made with the
   State treasurer by a foreign insurance company which had become
   insolvent, and hence the costs of such reference were properly
   chargeable upon the deposit.

Appeal from a decree of the Circuit Court of the city of
Richmond. From a decree allowing counsel fees and costs
defendants appeal.

*Reversed.*

The opinion states the case.

*George Bryan,* for the appellants.

*Christian & Christian, Scott & Buchanan,* and *Hunsdon Cary,* for the appellees.

HARRISON, J., delivered the opinion of the court.

The German National Insurance Company, a foreign corporation, desiring to conduct its fire insurance business in this State, established, in April, 1906, an agency at Richmond, Va. As required by law, it had deposited with the State treasurer United States three *per cent.* bonds, of the face value of $10,000, as a security for the payment of policies issued by it to residents of this State. Va. Code (1904), ch. 53, secs. 1271-1274. Before, however, it had issued a single policy to a resident of this State, the company was adjudged insolvent by the Circuit Court of Cook county, Illinois, in a suit in equity instituted in that court, and by an order entered therein the State Bank of Chicago was, in November, 1906, duly appointed receiver for the purpose of winding up its business.

Section 1274 of ch. 53, Va. Code, 1904, is as follows: "Upon the bonds deposited as aforesaid with the treasurer by a foreign insurance company, the holders of all policies of said company made with residents of this State shall have a lien for the amounts due them, respectively, under or in consequence of such policies, for losses, equitable values, return premiums, or otherwise, and shall be entitled to be paid ratably out of the proceeds of said bonds, if such proceeds be not sufficient to pay all of said policyholders; and whenever any such company, depositing bonds as aforesaid, shall have become insolvent or bankrupt, or shall have made an assignment for the benefit of its creditors, any holder of such policy shall have the right to

file a bill in the Circuit Court of the city of Richmond to enforce the said lien for the benefit of all the holders of such policies. The treasurer shall be a party to the suit and the fund be distributed by the court."

Under this section, the Virginia State Insurance Company, in January, 1907, filed the bill in this case, in the Circuit Court of the city of Richmond, on behalf of itself and all other holders of policies in the German National Insurance Company who are residents of the State of Virginia, and who should come in and make themselves parties to the suit and contribute to the costs thereof.

The bill alleges, that the complainant is the holder of a policy of re-insurance, issued by the German National Insurance Co., being a contract of re-insurance of a policy issued by the complainant on a stock of goods in Watertown, New York, upon which a loss by fire had occurred and had been paid by complainant, amounting to $717.40. The insolvency of the German National Insurance Co. is alleged, and the appointment of a receiver by a court of competent jurisdiction in the State of Illinois to take charge of its assets. The deposit by the debtor company of $10,000 of United States bonds with the treasurer of Virginia is also alleged. The bill makes the German National Insurance Co. and A. W. Harman, Jr., treasurer of the State of Virginia, parties defendant, and prays that a receiver be appointed to take charge of and administer the Virginia assets of the defendant company under the orders of the court; that an account may be taken of the amount due to the complainant and other policyholders; that the bonds deposited with the treasurer, or so much thereof as is necessary, may be sold to pay the several amounts found to be due; and that a reasonable and proper fee be allowed the counsel of complainant out of the fund derived from the sale of such bonds for instituting and prosecuting this suit.

After due notice to the defendant company, an order was entered appointing Thomas C. Gordon as receiver of the Vir-

ginia assets of the defendant. This order, however, withheld from the receiver any power or control over the $10,000 of bonds on deposit with the treasurer of the State.

In January, 1907, the defendant company filed its demurrer and answer to the bill of complaint, admitting that a receiver had been appointed in Illinois to take charge of all of its assets wherever situated, including the bonds in the hands of the treasurer of Virginia. Respondent, after stating that it had issued no policies in the State of Virginia, submitted its interests in the cause to the protection of the court. At the same time, the State Bank of Chicago filed a petition in the cause, setting forth its appointment as receiver of the defendant insurance company by the Circuit Court of Cook county, Illinois, and its acceptance of the trust, and praying to be admitted as a party defendant in the cause, which was accordingly done.

In March, 1907, the defendant insurance company and its Illinois receiver asked leave to file a plea of tender, which was objected to and rejected. Thereupon, by the same decree, the court permitted the defendant insurance company to pay into court the sum of $810, alleged to be a sum sufficient to satisfy the demand of the plaintiff. By this same decree of March 9, 1907, which rejected the plea of tender, and permitted the payment of the complainant's demand into court, the cause was referred to one of the commissioners of the court, directing him to inquire and report the assets and liabilities of the defendant company in the State of Virginia, to settle the accounts of the receiver of the court, and to report what would be a reasonable fee to be allowed to the counsel of the complainant and receiver, and also what would be a reasonable fee for the attorneys of the defendant, A. W. Harman, Jr.

In response to this order of reference, a report was filed in July, 1907, finding that the only asset of the defendant company in the State of Virginia was its bonds, amounting to $10,000, in the hands of the State treasurer, and its only liability the demand asserted by the Virginia State Insurance

Company in its bill of complaint. The report then proceeds to ascertain that a fee of $500 should be paid, out of the assets of the defendant company, to Messrs. Christian & Christian, as attorneys for the complainant and the home receiver; and that a fee of $375 should be paid out of such assets to Messrs. Scott & Buchanan, as counsel for A. W. Harman, Jr., treasurer. The commissioner further finds that no assets had come into the hands of Thomas C. Gordon, receiver, and that the only disbursement that he had made was $22.40 paid as premium on his bond as receiver.

The allowance of the counsel fees mentioned, by the commissioner, was excepted to by the Illinois receiver of the defendant company. By decree of October, 1907, these exceptions were overruled and the report confirmed; the State treasurer directed to sell $1,500 of the bonds in his hands, and to deposit the proceeds in bank to the credit of the court; and the clerk of the court, as commissioner appointed for the purpose, was directed to pay out of the aggregate fund to the credit of the court, which included the $810 already deposited by the defendant company, the debt due the complainant, amounting to $837.37; the counsel fees reported by the commissioner, amounting to $875; and other costs aggregating $215.98; making an aggregate of $1,090.98, in counsel fees and other costs, which the defendant company was required to pay as the price of being permitted to discharge a lien of about $800, the validity of which was never denied.

From this decree the cause was brought to this court for review.

Touching the allowance of counsel fees, this court has recently declared that the power of awarding fees to counsel was capable of great abuse, and was one which should be exercised with the most jealous caution and regard for the rights of litigants, lest thereby the administration of justice be brought into reproach. *Stoneburner & Richards* v. *Motley,* 95 Va. 784, 30 S. E. 364.

This language is significant and very pertinent to the present inquiry. The fee of $500 allowed the firm of Christian & Christian, attorneys, is stated to be for services rendered their client, the complainant in the cause, and for representing the Virginia receiver. The record fails, however, to disclose any services rendered the receiver. There were no liabilities, except the debt due the complainant. Not a dollar of assets came to this receiver's hands, and there was no settlement of his accounts, for the reason that there was nothing to settle. The claim, therefore, of a fee of $500 by Christian & Christian, and its allowance, could only have been for their services in bringing and prosecuting this suit for their client, the Virginia State Insurance Company.

The counsel for the complainant endeavors to differentiate this case from an ordinary creditor's suit, but we fail to appreciate the force of this argument. It is true the bill was filed in pursuance of statutory authority, but it is in substance nothing more than an ordinary creditor's bill on behalf of the complainant, to compel the satisfaction of a statutory lien upon certain bonds in the hands of the State treasurer, which belonged to the defendant company. So far as the compensation of complainant's counsel is concerned, there is no difference between this and any other creditor's suit.

We are of opinion that the allowance of the fee of $500 to the counsel for complainant, to be paid out of the bonds of the defendant company in the hands of the State treasurer, as compensation for their services in prosecuting this suit, is, under the circumstances disclosed by this record, without precedent in this State, and not warranted by the law of any jurisdiction to which our attention has been called. The reverse of such a practice is the established law in Virginia, as shown by repeated decisions of this court.

In the case of *Bank of Charlottesville* v. *Manoni*, 76 Va. 802-808, which was a creditors' bill to enforce certain judgment liens on the real estate of the defendant, Judge Burks, delivering the

opinion, said: "The taxed costs were properly ordered to be paid out of the fund, but we can see no good reason why the debtor should be required to pay more than the legal fee to plaintiff's counsel. If it be proper that the counsel representing the creditors have an allowance beyond the legal fee for their services, the creditors should pay it, and if paid out of the fund, it should be credited ratably on the judgments, so as not to tax the debtor with it."

In the case of *Stovall* v. *Hardy,* 1 Va. Dec. 342, 349, Judge Barton, of the special court of appeals, says: "It is a general practice to require, when one creditor, suing for himself and others who may come in and contribute to the expenses of the suit, institutes proceedings for their common benefit, that those who derive a benefit shall bear their proportion of the expense and not throw the whole burden upon one. This is equitable and just. But it only applies to those creditors who derive a benefit from the services of counsel in a cause in which they are not specially represented by counsel. If a creditor has his own counsel in a cause, he cannot be required to contribute to the compensation of another. And this contribution must come from the creditors. The debtor cannot be charged with it."

In the case of *Roller* v. *Paul,* 106 Va. 214, 55 S. E. 558, where the counsel for creditors sought to have a fee allowed him out of a balance of the debtor's estate, after the creditors had been satisfied, it is held, that "where a fund has not been created, increased or preserved by the aid of counsel, but has at all times been under the control and protection of the court, it is not proper to decree fees to counsel for creditors, who have conducted a protracted litigation over a part of the fund, to be paid out of a residuum of the fund to which the creditors are not and never were entitled."

The most recent expression of this court is to be found in the case of *McCormick* v. *Elsea,* 107 Va. 472, 59 S. E. 411, where it is said: "Except in rare instances, the power of a court to require one party to contribute to the fees of the counsel of

400   GER. NAT. INS. CO. *v.* VA. STATE INS. CO., 108 VA. 393.

Opinion.

another party must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers or creates a fund which enures to the common benefit of all; but the discretion vested in the court should never be exercised in a case where the interests of a party whose fund is sought to be charged are antagonistic to the party for whose benefit the suit is prosecuted."

In an able article by the late Colonel John H. Guy, a distingushed member of the Richmond bar, read before the Virginia State Bar Association, entitled "Allowance by Courts of Fees to Counsel," he says: "Where counsel has in no sense represented any party but his own client; where he has borne no anxiety and incurred no responsibility on account of their interests; where his work, though it has incidentally secured to them their rights, was not done for them, nor at their request, they cannot be said to have come under legal or equitable liability to him." 13 Virginia Law Journal, 533.

We are further of opinion that it was error to tax the defendant insurance company with the payment of a fee of $375 to Messrs. Scott & Buchanan, as counsel for the appellee, A. W. Harman, Jr.

There is much force in the contention that, under Virginia Code, secs. 3203-3204, it was the duty of the State treasurer, if he needed counsel in this matter, to have sought and been guided by the advice of the attorney general of the State. See *Ins. Co.* v. *Cogbill,* 30 Gratt. 72, 78. In the view, however, that we take of this case, it is unnecessary to consider this question, for the reason that it is apparent from the answer filed by the treasurer, and from the whole record, that, so far as the bonds in his custody were concerned, and their proper disposition, he was in no need of counsel or legal advice.

The bonds of a foreign insurance company which are deposited with the State treasurer under section 1271 of the Code, are in his hands clothed with a trust under the authority of a public law. He holds the bonds of such company, doing busi-

ness in this State, first, for the people of Virginia designated by law, and then for the insurance company making the deposit, and neither he nor the courts have power to divert the fund from the destination prescribed by the law of its creation. *Buck* v. *Guarantors Co.,* 97 Va. 719, 34 S. E. 950.

After the institution of this suit, alleging the insolvency of the defendant company, with the treasurer before the court, and asking that its liabilities to the citizens of Virginia be ascertained, the responsibilty of the treasurer, with respect to the proper disposition of the bonds, ceased, for the reason that the statute expressly provides that when such a suit is brought and the treasurer made a party, the fund shall be *"distributed by the court."* The entire fund was represented by counsel. There were only two pecuniary interests in the fund, the creditors on the one hand, and the defendant company on the other. Each of these interests was represented by counsel. The treasurer had no responsibility with respect to the proof of claims, nor would it have been proper for him to take any part for or against the defendant company, or any creditor who might assert a claim. He was the disinterested custodian of the securities in his hands, which were then under the control of the court, charged only with the responsibility of preserving the fund intact until ordered by the court to disburse it. That order, when obeyed by him, would have been a full discharge of all duty imposed upon him by the law, and his complete release from all responsibility in the premises.

It is suggested that the custodian of these bonds needed counsel to see that he incurred no danger of the fine and imprisonment imposed upon him by sec. 1277 of the Code, which provides that if the treasurer shall dispose of the bonds otherwise than in the manner provided by law, he shall be deemed guilty of a felony, and upon conviction thereof shall be punished by a fine double the amount of the bonds so disposed of, and by confinement in the penitentiary for a period not less than five nor more than fifteen years. Any liability under this

section would arise from an intentional misappropriation by the treasurer of the fund in his custody, and if the treasurer had conceived such a purpose, it is difficult to understand how the employment of counsel in this case could have prevented its accomplishment. There is, however, nothing in this record to suggest such a liability on the part of this long-trusted and faithful official, or his need of counsel to protect him against any such malfeasance in office. If there had been, it is manifest that he could not tax the fund in his hands belonging to the defendant company for the purpose of securing himself protection against his own wrong doing. There is no statutory provision authorizing the State treasurer to employ counsel, and we find nothing in this record to justify the appropriation of the property of the defendant insurance company to the payment of fees claimed by his private counsel.

It is objected that the circuit court erred in rejecting the plea of tender, and in placing upon the defendant company the costs of the order of reference which accrued after the defendant had paid into court the amount of the claim asserted by the complainant, and in allowing interest upon such claim after the amount thereof had been deposited with the court.

Under the circumstances here disclosed, this objection cannot be sustained. The plea of tender, as shown on its face, was coupled with a motion to dismiss the suit, the latter being the real object aimed at. The court permitted the amount tendered to be deposited to the credit of the cause, but properly overruled the motion to dismiss the suit. With the plea of tender, the defendant withdrew its answer theretofore filed, and the plea does not aver the claim asserted by the complainant to be the only outstanding lien upon the fund. As provided by statute, the suit had been brought for the benefit of all the citizens of Virginia who held liens upon the fund, under the policies of the company, for losses, equitable values, return premiums, or otherwise. There had already intervened in the case a petition asserting the claim of a creditor other than the

complainant, which was subsequently abandoned.   In the situation of the case, at the time the motion to dismiss was made, the order of reference was proper.   It was necessary, in order to properly dispose of the fund under its control, that the court should be informed as to the liens upon it; and the usual and proper mode of securing this information is from the report of a commissioner, made after due notice.   The only exception to the report when made was to the allowance of counsel fees out of the fund.   There was no exception to the amount of the debt audited in favor of the complainant, nor was there any exception to the amount of the cost of executing the order of inquiry, which was practically the only cost after the deposit was made. The final decree appealed from states that the defendant company desires to take an appeal from only so much of such decree as allows the counsel fees mentioned, and the decree is only suspended and bond required as to those two items.

For the error of the circuit court, in taxing the fund in the custody of the State treasurer with a fee of $500 in favor of Messrs. Christian & Christian, attorneys for the complainant, and in taxing that fund with a fee of $375 in favor of Messrs. Scott & Buchanan, as private attorneys for the State treasurer, its decree of October 21, 1907, must be set aside, and the cause remanded for further proceedings not in conflict with the views expressed in this opinion.

*Reversed.*