# Richmond.

COCHRAN v. RICHMOND & ALLEGHANY R. Co.

APRIL 18, 1895.

1. TRUSTEES—*Attorneys Fees—Payment out of Trust Fund.*—Trustees, who in good faith engage counsel to aid them in the execution of the trust, are entitled to pay them out of the trust fund, or to be reimbursed out of that fund for all expenses which they have incurred, including reasonable attorneys' fees. Upon the evidence in this case, the attorneys' fees were properly paid out of the trust fund.

2. TRUST FUND—*Payment into Court—Interest.*—Where a trust fund has been paid into court by a purchaser of the trust property, but, in consequence of resistance to the payment of proper charges on the fund, it has remained idle in the hands of the court, the loss of interest must fall on the trust creditor who has resisted the charge.

3. TRUST FUND—*Loan to Trust Creditor—Payment.*—Where a trust fund is loaned to the trust creditor pending litigation over charges on the fund and its distribution, and on final settlement it is ascertained to belong to such creditor, and is not sufficient to pay his debt, the transaction should be treated as a payment on the debt as of the date of the loan, and not as a loan.

Appeal from a decree of the Circuit Court of the city of Richmond, pronounced March 19, 1891, in the chancery suit of *Terrell & Bocock, trustees,* v. *Richmond & Alleghany R. Co. and others.*

*Affirmed.*

The opinion states the case.

*A. B. Guigon,* for the appellant.

*Wm. J. Robertson* and *Henry T. Wickham,* for the appellee.

KEITH, P., delivered the opinion of the court.

The controversy before us presents but a small portion of a very important litigation conducted in the Circuit Court of the city of Richmond, having for its object the enforcement of certain liens by deed of trust upon the franchises and property of the Richmond & Alleghany R. R. Co. The defendant acquired the franchises and property of the James River and Kanawha Canal Co., subject to two deeds of trust for the payment of certain bonds, and proceeded to create other liens by deed of trust thereupon in favor of creditors of its own, which resulted in bills for foreclosure brought by the trustees in the last mentioned trusts. Into the suits thus instituted against the Richmond & Alleghany R. R. Co. came T. W. McCance and James Pleasants, surviving trustees in a deed from the James River and Kanawha Canal Co. to secure certain bonds of said last mentioned company, and John Dunlop, surviving trustee in the deed to secure its second mortgage bonds.

It appears that the parties interested in the suit were at one time upon the eve of an amicable arrangement of all the questions at issue, and the negotiations with respect to the reorganization of the affairs of the Richmond and Alleghany road had so far progressed that the decree for sale had been drawn by which the scheme was to be carried into affect. The proposed plan involved the sale of the Richmond & Alleghany R. R. subject to certain encumbances, among them the deeds to secure the first and second mortgage bonds of the James River and Kanawha Canal Company. This feature seems not to have met with the concurrence of those charged with the control of these interests, and a change was made upon the motion of the aforesaid trustees, by their counsel, by which it was provided that the property should be sold for a cash payment sufficient to meet the demands, principal and interest,

of holders of these James River and Kanawha Canal bonds, up to the day of sale. The property was sold to the C. & O. R. R. Co., one of the appellees, and the cash payment required was brought into court.

In the meanwhile a controversy had arisen between Messrs. Cabell & Smith, counsel for the trustees of the James River and Kanawha Canal trusts, and some of the beneficiaries under said trusts. Cabell & Smith had been employed by the trustees, and had received compensation for what they had done, but, having performed additional services, claimed additional compensation. Their claim for additional compensation seems to have been based upon the change which they had brought about in the terms of the decree by which the amount of the liens represented by them was brought into court in cash, instead of resting upon the property. Their petition was filed April 17, 1889, and excited great opposition. It was strenuously resisted by those interested in the fund out of which it was to be paid, and by none more earnestly than by J. C. Cochran, the appellant, who, on the 24th of May, 1889, filed his answer to the petition.

The contest waged over this petition caused the trouble which has resulted in the appeal which we are now called upon to decide. The money to pay off every claimant was in the hands of the court, and every demand would have been settled, principal and interest, without delay, had not this controversy arisen. The result of it has been that in 1891 the additional compensation to Cabell & Smith was agreed upon by all concerned, including the appellant, who, however, still claimed that it ought not to have been charged upon the fund in which he was interested. Every other litigant dropped out. The court decreed the fee to be distributed among the owners of the James River and Kanawha Canal bonds in proportion to their several holdings, and the objection to this ruling constitutes the first assignment of error by the appellant.

Pending this litigation the money with which these bonds were to be paid lay idle in the hands of the court, while the interest on the bonds continued to accumulate, with the inevitable result that the assets ultimately proved insufficient to meet the liabilities which were charged upon them.   Cochran insisted that he was entitled to full interest upon his bonds, while the court was of opinion and decreed that he was only entitled to interest up to the date when the fund was paid into the court in part for his benefit, and the objection to this action of the court constitutes the only other assignment of error.

The rule is, without doubt, that contended for by the plaintiff, but there are exceptions to it.   It cannot be denied that trustees, who in good faith engage the services of counsel to aid them in the execution of their duties, are entitled to pay them out of the trust fund, or to be reimbursed out of that fund for all expenses which they have incurred, including reasonable fees to attorneys.   It was certainly an important service rendered by Cabell & Smith in having the money due upon the first and second trusts of the James River & Kanawha Company brought into court.   Presumably it was right and proper that it should be done, and that it was beneficial to those interested.   Counsel appear to have advised it in good faith, and the trustees in good faith to have acted upon their advice.   These trustees were not only authorized, but it was their duty, having accepted the trust, to do all that in their judgment the situation required, to protect the interest of the beneficiaries of the trust, and, acting within the scope of this duty, the beneficiaries are bound by their action.   In this case there is not the slightest suspicion of impropriety upon the part of either the trustees, or their counsel.   Their demand being just its payment should not have been resisted, and had that demand been promptly recognized and paid, all difficulty as to the distribution of this fund would have been obviated.

This being so, and loss having resulted by reason of the fact that an opposite course was pursued, who shall suffer the consequences? The purchaser did as it was required by the court to do. It placed in the hands of the court a sum ascertained to be sufficient to satisfy every just demand. It is a familiar principle that where a loss has occurred which must fall upon one of two persons, it must be borne by him by whose act of omission or commission it has been occasioned. In this case, it was the result of a protracted litigation carried on in resisting a righteous claim, and it continued after other individuals, who, at the beginning, made common cause with the appellant, had become convinced that their position was untenable, and had accepted the situation and acquiesced in the result. There can be no doubt that the appellant was the efficient cause of the loss which has been sustained, and he therefore must suffer the consequences.

It seems that during the course of the proceedings in the Circuit Court the appellant was allowed to become a borrower of the fund which he claimed to the extent of 90 *per cent.* of the face value of his demand, giving his obligation therefor, and depositing the original bonds, of which he was the holder, as collaterals for its payment. We think that in the final settlement with him this transaction should not be considered as a loan, but as a payment to him as of its date, and, with this direction as to the terms upon which a final settlement is to be made with the appellant, the decree appealed from is affirmed.

AFFIRMED.